UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America<br><br>*v.*<br><br>Jennifer Vallombroso | Criminal No. 3:07cr211 (JBA) |

**RULING ON DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR, ALTERNATIVELY, MOTION TO VACATE
CONVICTION AND FOR NEW TRIAL [Doc. # 61]**

On February 27, 2008, Defendant Jennifer Vallombroso was convicted by jury of conspiring with others to possess with the intent to distribute, and to distribute, five or more grams of a substance containing cocaine base, a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) and § 846. Defendant now asks this Court to acquit her, or alternatively to vacate this jury verdict and grant her a new trial. For the reasons set forth below, Defendant's motion is denied.

**I.  Standards**

To be convicted of a drug conspiracy, "[t]he record must . . . permit a rational jury to find: (1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Santos*, 541 F.3d 63, 70, 2008 U.S. App. LEXIS 18724, *17–*18 (2d Cir. 2008) (citations omitted). Because in this case the indictment charges Defendant with conspiring to distribute five or more grams of a substance containing cocaine base in violation of § 841(a)(1) (distribution) and -(b)(1)(B)(iii) (five or more grams) and § 846 (conspiracy) (*see* Indictment ¶ 1), under *United States v. Gonzalez*, 420 F.3d 111 (2d Cir. 2005), that quantity—five or more grams—is also an element of the crime of which Defendant was

convicted.[1]  However, for a conspiracy conviction the government is not required to prove that the defendant knew the particular drug quantities involved in the conspiracy.  The

---

[1] Within 21 U.S.C. § 841(b)(1), which prescribes penalties for the manufacture, distribution, or dispensing of drugs (and, through § 846, penalties for conspiracies to do each of those things), "each maximum sentence [is] linked to a corresponding minimum" associated with particular drug quantities.  *Gonzalez*, 420 F.3d at 121.  In light of the Supreme Court holding that "facts that increase the prescribed range of penalties to which a criminal defendant is exposed . . . must be established by proof beyond a reasonable doubt," *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Second Circuit held, in a unanimous *en banc* opinion, that the specific quantity ranges associated with the penalties prescribed in §§ 841(b)(1)(B) and (C)—in the case of crack cocaine, "5 grams or more" and "50 grams or more"—are "not mere sentencing factors but elements of aggravated offenses defined by reference to those statutes."  *Gonzalez*, 420 F.3d at 123 (describing *United States v. Thomas*, 274 F.3d 655 (2d Cir. 2001) (*en banc*)).

*Gonzalez* thus rejects those portions of the Second Circuit's post-*Thomas* opinions, such as *United States v. King*, 345 F.3d 149 (2d Cir. 2003), which suggest that drug quantities might not be elements of a § 841(a) crime if the quantity does not result in a sentence above the statutory maximum.  *See Gonzlez*, 420 F.3d at 128, 130 (describing the discussion in *King* to the contrary of the *Gonzalez* rule as "*dicta*"); *id.* at 128 (stating that "the rule in [*Apprendi*] may well reach more broadly than courts had originally understood" in light of post-*Apprendi* Supreme Court opinions).  In their stead, *Gonzalez* explains that "[b]y generally construing drug quantity as an element to be pleaded and proved in all prosecutions involving aggravated § 841 offenses, *Thomas* effectively ensured that no future § 841 conviction would be vulnerable to *Apprendi* attack."  *Gonzalez*, 420 F.3d at 124.  Thus the *quantity* of drugs alleged to have been distributed in violation of § 841(a)(1), or conspired to be distributed in violation of § 841(a)(1) and § 846,

> is properly construed as an element of offenses defined, in part, by § 841(b)(1)(A) or -(b)(1)(B) because, under those statutes, quantity "'may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs.'"  In such cases, '§ 841(a) no longer presents the *entire* offense; one element of the crime (drug quantity) is to be found in § 841(b).'

*Gonzalez*, 420 F.3d at 124 (quoting *United States v. Outen*, 286 F.3d 622, 635 (2d Cir. 2002) (in turn quoting *Thomas*, 274 F.3d at 660)) (emphasis in *Outen*); *see also Gonzalez*, 420 F.3d at 129 ("drug quantity must be deemed an element for all purposes relevant to the application of" ranges described in § 841(b)(1)(A) and -(b)(1)(B)).

quantity involved in the conspiracy and the defendant's knowledge of the conspiracy are two distinct and independent elements of drug conspiracy crimes. *See Gonzalez*, 420 F.3d at 128 (describing approvingly the non-*dicta* portion of *King* as rejecting the argument that "*Apprendi* required the jury *further* to find that the defendant knew that the offense involved the statutory drug quantity" because it is "at odds with our past precedent holding that the only knowledge required to prove an aggravated drug charge was that established in § 841(a)") (citing *King*, 345 F.3d at 151–53) (emphasis in original).

This Court may set aside the verdict returned by the jury against Defendant and instead enter an acquittal on her behalf under Federal Rule of Criminal Procedure 29(c)(2), but a motion to do so "should be granted only if the district court concludes there is 'no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) (quoting *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir. 1972)). Stated another way, the Court must deny a Rule 29 motion if it can conceive of "*any* rational trier of fact [which] could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Irving*, 452 F.3d at 119 (affirming conviction where "the evidence is sufficient to allow any reasonable juror to find defendant guilty").

Under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Second Circuit has explained that while Rule 33 "by its terms gives the trial court 'broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice,'" the court should exercise its discretion with reference to:

[t]he ultimate test on a Rule 33 motion[, which] is whether letting a guilty

3

> verdict stand would be a manifest injustice. The trial court must be satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. "There must be a real concern that an innocent person may have been convicted." Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority "sparingly" and in "the most extraordinary circumstances."

*United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

When considering a Rule 33 motion, the court must be particularly deferential to determinations made by the jury. "It long has been our rule that trial courts must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses. It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414. In the context of a contention that "the evidence was insufficient to" support the defendant's conviction, this respect for the jury's factfinding role includes "crediting, as we must, every inference that could have been drawn in the government's favor and deferring to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. Douglas*, 525 F.3d 225, 251 (2d Cir. 2008). Similar deference is due the jury in considering Rule 29(c) motions. *See United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (explaining, in context of Rule 29(c) motion, that "[w]e have emphasized that courts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal"). Such deference "'is especially important when reviewing a conviction for conspiracy . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects

4

of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'" *Id.* (quoting *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992)).

## II.   Discussion

Defendant makes two arguments in her motion. First, she argues that the evidence at trial does not establish beyond a reasonable doubt either that she "'intentionally and voluntarily' possessed crack-cocaine," or that she "possessed crack-cocaine with the intent to distribute it." (Def.'s Mem. Supp. Mot. J. Acquittal or Mot. Vacate Conviction and for New Trial ("Def.'s Mem. Supp.") at 3.) In support of this argument Defendant suggests that the evidence would support equally the conclusion that she possessed the crack cocaine "for the sole and exclusive purpose of ingesting it." (*Id.*) Second, Defendant argues that the evidence at trial does not "establish beyond a reasonable doubt that [she] possessed 5 or more grams of crack-cocaine." (*Id.*) Defendant suggests that the evidence lends equal support to her alternate theory that she possessed "[no] more than a trifle of crack," and that in order to convict her "the jury had to draw several inferences in favor of the government from the presented evidence." (*Id.*)

In arguing that the evidence does not establish beyond a reasonable doubt that she possessed crack cocaine, Defendant misapprehends the elements of the offense of which she was convicted. As listed above, the elements of a drug conspiracy, including a conspiracy to distribute a certain quantity of drugs, do not include the actual possession of the drugs whose distribution is the object of the conspiracy. Any evidence from which a rational jury could conclude that there was a conspiracy to distribute drugs, and that Defendant knew of and intentionally joined it, is sufficient to support her conviction, regardless of whether she ever possessed any drugs. Moreover, the government need not prove any overt acts that

5

Defendant took in furtherance of the conspiracy. *See Santos*, 541 F.3d at 68 ("the drug conspiracy statute, 21 U.S.C. § 846, does not require proof of an overt act in furtherance of the conspiracy"). Thus, her arguments about the lack of evidence regarding her actual possession of drugs lack merit.

Defendant's arguments regarding evidence establishing the quantity of crack cocaine involved in the conspiracy are also unavailing because the jury was presented with sufficient evidence from which to conclude beyond a reasonable doubt both that the conspiracy itself involved the distribution of five or more grams of crack cocaine, and that the Defendant knew of and intentionally joined that conspiracy.

FBI Special Agent Samuel J. DiPasquale, who helped "oversee the investigation" of the Defendant, used an FBI cooperating witness, Gerald Cobb, to purchase crack cocaine from the Defendant and her husband, John Vailette. (Trial Tr. 38:10–39:1.) According to Mr. DiPasquale, Mr. Cobb, Mr. Vailette and Defendant were in cell phone contact on April 7, 2007 (*id.* 49:15–55:6), and Mr. Cobb testified that the Defendant called him "in the beginning of April" in response to his call to Mr. Vailette and told him that she and Mr. Vailette "had gotten a new connect," who is "the person that you are going to buy the drug from" (*id.* 180:10–181:25). According to Mr. DiPasquale, this information spurred the FBI "to make a controlled purchase of a quantity of crack cocaine" in order "[t]o determine . . . that [Defendant and Mr. Vailette] did have a new source of supply" of the drug. (*Id.* 49:20–56:1.) Mr. DiPasquale testified that through Mr. Cobb the FBI arranged to purchase on April 13, 2007 "one ounce of crack cocaine, or cocaine base," which is approximately 28 grams (*id.* 56:2–13), which purchase Mr. Cobb later confirmed he had successfully made from Mr. Vailette (*id.* 58:8–59:1 (DiPasquale testimony of successful purchase), 183:9–22

6

(Cobb testimony of same)). Mr. DiPasquale then testified that the FBI weighed the crack cocaine that Mr. Cobb had purchased on April 13th and found it to be in excess of five grams. (*Id.* 62:3–9.)

In addition, Mr. Cobb testified that after the April 13th deal, Mr. Vailette told him that Mr. Vailette could procure more drugs for Mr. Cobb, and on April 24 Defendant went with the two of them as Mr. Cobb sought to buy crack cocaine. According to Mr. Cobb, "we were trying to find somebody to purchase the crack from, and John made a lot of phone calls and Jennifer tried finding somebody as well." (*Id.* 192:8–15.) In particular, when it appeared that the person Mr. Vailette said would have crack cocaine for Mr. Cobb was unavailable, the Defendant "tried texting somebody on the cell phone," and that person's name was Tony. (*Id.* 194:23–195:12.) Eventually, Mr. Cobb testified, "I got the crack from John [Vailette], but John got it from a guy Tony." (*Id.* 196:2–3.)

Mr. Cobb further testified that after April 24th he again planned with both Mr. Vailette and the Defendant to buy crack cocaine:

> Q. Now, you testified earlier that the defendant went with you two times to buy crack. The second time around what were you supposed to buy?
>
> A. I believe a quarter ounce.
>
> . . .
>
> Q. After you got the recording device from the agents, can you describe what happened that day?
>
> A. I went and I picked John and Jennifer up, and we were trying to purchase crack cocaine, a quarter ounce, and they weren't having no luck. Actually I didn't have a lot of time myself that day, it was something that needed to happen quick, and it just wasn't happening

7

>   quick enough, so they made some phone calls, tried a person for crack.
>
> Q. When you say they made phone calls, who are you referring to?
>
> A. John [Vailette] and Jennifer [Vallombroso].

Trial Tr. 198:2–11.

On this evidence, a rational jury could find beyond a reasonable doubt that Defendant knowingly and intentionally joined in a conspiracy to distribute crack cocaine, and that the conspiracy involved five or more grams of crack cocaine. Although her conviction did not require proof of any overt acts by the Defendant in furtherance of the conspiracy, the evidence of her conduct, including attempting to text a seller to obtain a substance containing cocaine base for Mr. Cobb on April 13th and making phone calls for the same reason on a later occasion, amply supports a conclusion that she knew of and joined the conspiracy. The evidence further supports a conclusion that this conspiracy involved the distribution of five or more grams of a substance containing crack cocaine: the last, and unsuccessful, attempt that Mr. Vailette and the Defendant made to connect Mr. Cobb to a seller involved a quarter-ounce—which alone is over five grams of such a substance.

In light of this evidence and the Court's deference to the jury's role as fact-finder in this case, the Court rejects Defendant's argument that there are "two equally consistent interpretations of the evidence" (Def.'s Mem. Supp. at 4) and that any inferences made by the jury on the basis of the evidence could not have supported her conviction (*id.* at 3–4). These arguments are premised on improperly diminished deference to the jury, and in any event are belied by evidence that the Defendant knowingly and intentionally conspired with Mr. Vailette to possess with intent to distribute five or more grams of crack cocaine to Mr.

Cobb as manifested, for example, by her attempts to procure crack cocaine for intended sale to Mr. Cobb.

The Court concludes that there was no manifest injustice in this case warranting the vacating of the Defendant's conviction under Federal Rule of Criminal Procedure 33 because it does not present an "exceptional circumstance" in which there is concern that a convicted defendant was innocent. *Ferguson*, 246 F.3d at 134. For the same reasons, the evidence described above precludes this case from being one in which "there is 'no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt,'" *Irving*, 452 F.3d at 117, and thus Defendant's motion under Rule 29(c) must also be denied.

### III. Conclusion

For the reasons set forth above, Defendant's motion for judgment of acquittal or, alternatively, motion to vacate conviction and for a new trial [Doc. # 61] is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of October, 2008.